IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24CR459 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| DAMIEN SAMPLE, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Stephanie Wojtasik, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States's position regarding Defendant Damien Sample's sentencing. For the reasons explained below, and those to be advanced at the sentencing hearing, the United States submits that a sentence of imprisonment at the high-end of the advisory Guidelines range is appropriate.

I. **Factual background.**

To support its sentencing position, the United States offers the following summary of the facts. The PSR also includes a description of Sample's offense conduct.

A confidential human source ("CHS") approached law enforcement in December 2023 with information about Defendant Damien Sample. CHS claimed that Sample was attempting to develop a group called "FELONATION" into a criminal enterprise where its members would acquire firearms to conduct robberies, use the money from the robberies to buy drugs, sell the drugs, and reap the profits. CHS worked with FBI to conduct controlled purchases of both narcotics and firearms from Sample.

On May 1, 2024, CHS met Sample at his home to buy pills and a firearm from him. Sample explained that he could acquire more firearms from "Steve," later determined to be co-defendant Steven Johnson. Sample said he was "gonna get a mother fuckin chopper[, a] mother fuckin shotgun," from Johnson. In exchange for $400, Sample provided the CHS with a Romarm Carpati 380 Model 95 firearm bearing serial number A-3920, two magazines, and a holster, along with three bags of pills. Laboratory testing later confirmed that the pills contained methamphetamine and weighed approximately 95.27 grams.

CHS later inquired with Sample about purchasing a firearm from Steven Johnson. Sample told CHS that Johnson had an AR, two 9mm Taurus handguns, and a "plug," meaning someone who could illegally supply contraband. Sample texted CHS a photograph of five guns that Johnson told Sample that Johnson had for sale. One of the firearms included in the photo was a shotgun painted with the American flag on it.

CHS, Sample, and Johnson arranged for the firearm purchase to occur on June 2, 2024. CHS and Sample traveled to Johnson's house on that day. When they arrived, Johnson showed CHS and Sample several firearms including the American flag shotgun. CHS agreed to purchase that shotgun from Johnson along with ammunition for it. Johnson offered to sell the items for $640 but CHS only had $500 in cash. Johnson accepted the $500 with CHS's assurances that CHS would pay Johnson the remainder later. A few weeks later, Sample played intermediary by allowing CHS to pay Sample the money with Sample forwarding it on to Johnson.

CHS completed another controlled drug purchase from Sample on October 2, 2024. That day, CHS went to Sample's house where CHS met Sample, his girlfriend Yolanda Bowie, and another individual. Sample and Bowie counted out the pills for CHS into groups of 100. CHS paid Sample $450 in exchange for 300 pills. Laboratory tests later confirmed that the pills to be

61.37 grams of a mixture and substance containing a detectable amount of methamphetamine and 38.374 grams of a mixture and substance containing a detectable amount of fentanyl.

FBI executed a search warrant at Sample's house on November 6, 2024.  Inside, law enforcement found a Bersa SA .380 firearm, narcotics, drug paraphernalia, and several cell phones.  Laboratory testing later confirmed the following types and weights of narcotics: 204 methamphetamine tablets found in a plastic bag, which weighed 62 grams; a tablets/powder mixture containing methamphetamine found in a plastic bag, weighing 24.4 grams; 15.8 grams of cocaine crushed into powder found in a plastic bag; and 8.93 grams of cocaine crushed into powder in a plastic bag.

| II. | **The 18 U.S.C. § 3553(a) factors weigh in favor of imposing a term of imprisonment at the high-end of the advisory Guidelines range.** |
|---|---|

The nature and circumstances of Sample's offense, his violent criminal history, and the need for deterrence justify imposing a term of imprisonment at the high-end of the advisory Guidelines range.

The severity of Sample's conduct justifies a significant term of imprisonment.  Sample sold CHS meth pills on two separate occasions; the pills from the second buy also contained fentanyl.  Law enforcement found even more controlled substances at Sample's house during the search warrant.  On top of that, Sample—who himself is a prohibited, violent, convicted felon—sold CHS a firearm, knowing full well that CHS was likewise a prohibited, violent, convicted felon.  Sample was also happy to connect CHS with his friend, Steven Johnson, who could provide CHS with even more firearms.  Sample played the middleman by reconnecting CHS with Johnson and accompanying CHS during CHS's first firearm purchase from Johnson.  This conduct plus Sample's ambitions to create his own gang, "FELONATION," justify imposing a significant sentence.

Sample's criminal history not only shows a propensity for violence but also demonstrates the need for deterrence in this case. In 1996, Sample was sentenced to three years in prison for committing armed robbery. He robbed a Taco Bell employee at gunpoint as the employee attempted to deposit $2,500 at a bank. He violated his community control conditions three times upon his release. Then in 2002, he was convicted of aggravated robbery, attempted murder, and felonious assault after he robbed a bank on Cleveland's East side. The robbery turned into a shootout where Sample shot the bank security guard in the cheek, neck, and hand. He received sixteen years in prison. Shortly upon his release, he was convicted of escape for failing to report while on post-release control. Then in 2023, Sample was convicted of aggravated menacing. Sample punched Yolanda Bowie in the face, made her fall down the stairs, and proceeded to punch her two more times in the face as she attempted to flee. Sample had also thrown a brick through Brenda Sample's car window. Sample's lengthy and violent criminal history make clear that prior sanctions have not been an effective deterrent.

Ultimately the Section 3553(a) factors weigh in favor of imposing a term of imprisonment at the high-end of Sample's Guidelines range.

### III.     Conclusion.

For the reasons explained above, and those the government will advance at the sentencing hearing, the United States respectfully requests that the Court impose a term of imprisonment

within the high-end of the advisory Guidelines range.

                                                  Respectfully submitted,

                                                  DAVID M. TOEPFER
                                                  United States Attorney

By:   */s/ Stephanie Wojtasik*
       Stephanie Wojtasik (OH: 0097858)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3856
       (216) 522-8355 (facsimile)
       Stephanie.Wojtasik@usdoj.gov